**KUN YOUNG KIM, Plaintiff-Appellant,**

v.

**DISTRICT DIRECTOR OF the U. S. IMMIGRATION & NATURALIZATION SERVICE, Defendant-Appellee.**

No. 77–1637.

United States Court of Appeals,
Ninth Circuit.

Nov. 20, 1978.

---

John G. Ziegler (argued), Seattle, Wash., for plaintiff-appellant.

Robert M. Taylor, Asst. U. S. Atty. (argued), Seattle, Wash., for defendant-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Kun Young Kim has appealed from a summary judgment dismissing his petition for review of a decision of the United States Immigration and Naturalization Service (INS) denying Kim's application for nonimmigrant status as a "treaty investor" under 8 U.S.C. § 1101(a)(15)(E)(ii) on the ground that Kim's investment was not substantial, but was "in a marginal enterprise solely for the purpose of earning a living". We affirm.

### Factual Background

Kim, a citizen of the Republic of Korea, came to the United States in 1970 as a visitor. He later received student nonimmigrant status. In 1974 Kim applied for "treaty investor" nonimmigrant status. In 1975 his petition was denied by the District Director of the INS in Seattle. The District Director's decision was appealed to the Regional Commissioner of the INS for the Northwest Region. The appeal was dismissed and reconsideration denied. Kim was notified by the Director that he was to leave the United States by October 15, 1976.

Kim owns Stan's Drive-In, a fast food restaurant in Seattle. He purchased the restaurant for $29,500, making a down payment of $9,200 and giving a mortgage for the balance, payable at the rate of $450 per month. He made miscellaneous expenditures amounting to $2,221, resulting in an initial investment of approximately $11,500. Kim manages the restaurant and employs several persons who work there.

Income statements presented at the hearing before the District Director in February, 1975, showed profits of $156.62, $569.56 and $496.15 for the months of November, 1974 through January, 1975. Kim testified that these income figures were for the slow winter months and that he expected profits eventually would be from $15,000 to $20,000 a year. He said that he supported his family from the restaurant's profits and money given him by his wealthy Korean in-laws, who provided him with the funds to purchase the restaurant.

Income statements presented to the Regional Commissioner on appeal showed an increase in income. The Commissioner concluded, however, that a proper computation of the net profits ($1,000 in the best month) showed that the investment was made "solely for the purpose of making a living" and that Kim was not therefore entitled to treaty investor status. An income statement presented on Kim's motion for reconsideration showed a net profit for 1975 of $13,206. The motion was denied.

The district court held that the denial of investor treaty status was not an abuse of discretion. Noting that the controlling regulation (22 C.F.R. § 41.41) excludes from this status aliens who have invested "a small amount of capital in a marginal enterprise solely for the purpose of earning a living", the district court concluded: "The investment of $15,000 to $29,000 in a drive-in restaurant which produces take-home income for a family of three of approximately $1000 per month appears to fall squarely within this exclusion."[1]

### Issues on Appeal

Two related issues are presented: (1) whether the INS properly construed the

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. Deducting taxes from the net profit of $13,-206 resulted in the take-home income of approximately $1,000 per month. The increase in the investment resulted from payments on the mortgage.

term "investing, a substantial amount of capital," as used in 8 U.S.C. § 1101(a)(15)(E)(ii) and the Korean Treaty, as excluding investments solely for the purpose of making a living under 22 C.F.R. § 41.41(a); and (2) whether the INS abused its discretion in denying Kim's application on the ground that his investment was in "a marginal enterprise solely for the purpose of making a living".

### Applicable Law

(a) Definition of Treaty Investor

A treaty investor is a nonimmigrant who is entitled by the terms of a treaty to enter the United States

> solely to develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, *a substantial amount of capital.*

8 U.S.C. § 1101(a)(15)(E)(ii) (1976) (emphasis supplied). See generally 1 Gordon & Rosenfield, *Immigration Law and Procedure* § 2.11 (1978).[2]

The treaty upon which Kim relies, Treaty of Friendship, Commerce and Navigation between the United States of America and the Republic of Korea, 8 U.S.T. 2217 (the Korean Treaty), tracks the language of 8 U.S.C. § 1101(a)(15)(E)(ii). It provides in Article II(1)(b) that nationals of Korea may enter the United States

> for the purpose of developing and directing the operations of an enterprise in which they have invested, or in which they are actively in the process of investing, a *substantial amount of capital.*

(Emphasis supplied).

(b) Applicable Regulation

The INS rules on applications for treaty investor status when the applications are filed by aliens who are in the United States. In considering the applications, however, the INS is guided by a State Department regulation that lists the prerequisites for obtaining the status. INS Operating Instruction 248.6;[3] *Matter of Udagawa,* 14 I. & N. Dec. 578, 579 (BIA 1974); *Tokyo Sansei v. Esperdy,* 298 F.Supp. 945, 946 (S.D.N.Y.1966). As pertinent to this case, the State Department regulation reads:

> An alien shall be classifiable as a nonimmigrant treaty investor if he establishes to the satisfaction of the consular officer [or in this case, the INS] that he qualifies under the provisions of [8 U.S.C. § 1101(a)(15)(E)(ii)] *and* that: (1) He intends to depart from the United States upon the termination of his status; and (2) he is an alien who has invested or is investing in a bona fide enterprise and is not seeking to proceed to the United States in connection with the investment of *a small amount of capital in a marginal enterprise solely for the purpose of earning a living* . . . .

22 C.F.R. § 41.41(a) (emphasis supplied).

The INS denied Kim's application on the ground that he had failed to fulfill the regulation's requirement that an investment be more than "the investment of a small amount of capital in a marginal enterprise solely for the purpose of earning a living". Specifically, the INS looked to the results of Kim's investment in Stan's Drive-In and concluded that Kim's present and projected profit or take-home pay necessarily placed Kim's investment within the above-quoted language.[4]

### Standard of Review

It is well settled that courts must interpret treaties for themselves. Nevertheless,

---

**2.** The treaty investor's nonimmigrant visa has a duration of one year. The visa can be extended, however, in increments of one year. 8 C.F.R. § 212.2(e) (1977). Presumably, the status will terminate or a visa extension will not be granted if the alien ceases to develop or direct a qualifying enterprise.

**3.** The Operating Instructions are reprinted in 4 Gordon & Rosenfield, *Immigration Law and Procedure* (1978).

**4.** It is undisputed that Kim is developing and directing the operation of his enterprise. 8 U.S.C. § 1101(a)(15)(E)(ii). The Regional Commissioner found also that he had established his intent to depart from the United States upon termination of treaty investor status. 22 C.F.R. § 41.41(a).

the "meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight". *Kolovrat v. Oregon,* 366 U.S. 187, 194, 81 S.Ct. 922, 926, 6 L.Ed.2d 218 (1961).[5] Moreover, the scope of review in determining the status of an alien is ordinarily limited to a determination of whether the agency's action was arbitrary or capricious or an abuse of discretion. See, *e. g., Asuncion v. District Director, INS,* 427 F.2d 523 (9 Cir. 1970), denying the classification required for a preferential visa; and *Soo Yuen v. INS,* 456 F.2d 1107 (9 Cir. 1972), denying adjustment of status of an alien who entered the United States as a nonimmigrant. In this case we are required to construe the treaty provisions, giving weight to the interpretations of the State Department and INS, and determine whether the INS abused its discretion in denying Kim's application for nonimmigrant treaty investor status.

*Nonimmigrant Treaty Investor Status*

■ Nonimmigrant treaty investors avoid the presumption that they are immigrants. 8 U.S.C. § 1184(b). Accordingly, they are not subject to the quota restrictions placed upon immigrants under 8 U.S.C. §§ 1151–1154, nor subject to exclusion or deportation under many of the grounds applicable to immigrants. 8 U.S.C. § 1102. An alien who asserts that he qualifies for nonimmigrant status as a "treaty investor" has the burden of establishing his claim. His proof must be unambiguous and doubts should be resolved against the investor claimant. *Matter of Ahmad,* Int. Dec. # 2316 (1974) (citations omitted).

The term "substantial amount of capital" is not defined in either the 1952 Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.,* or the Korean Treaty. The legislative history of the Immigration and Nationality Act is of little assistance in resolving any uncertainty or ambiguity. Section 1101, containing "Definitions", includes in (a)(15)(E) two subsections—(i) relating to traders and (ii) relating to investors. The legislative history makes no specific reference to "treaty investors". The discussion of "treaty traders" contains the statement that the "class is enlarged to include aliens who, pursuant to treaty provisions, seek to enter the United States to develop or direct the operations of commercial enterprises"; and that this "category is intended to provide for the temporary admission of such aliens who will be engaged in developing or directing the operations of a real operating enterprise and not a fictitious paper operation". H.R. No. 1365, 1952 U.S.Code Cong. and Admin.News, pp. 1653, 1697.

In determining qualifications for nonimmigrant treaty investor status, the INS has adopted the relevant State Department regulation, 22 C.F.R. § 41.41, as a "reasonable construction" of 8 U.S.C. § 1101 (a)(15)(E)(ii). *Matter of Udagawa,* Int. Dec. # 2262, p. 579 (1974). Under 22 C.F.R. § 41.41 an alien qualifies for immigrant treaty investor status if he meets the requirements of 8 U.S.C. § 1101(a)(15)(E)(ii) and is not seeking to proceed to the United States in connection with the investment of "a small amount of capital in a marginal enterprise solely for the purpose of earning a living".

The INS found that Kim had failed to establish that his investment in the drive-in restaurant was anything more than a marginal investment made solely for the purpose of making a living in the United States. Kim contends that the INS erred in basing the denial of his application on the profitability of the drive-in. He argues that a proper interpretation of the word "substantial" in both the Immigration and Nationality Act and the Korean Treaty requires considerations of both an enterprise's profitability and its benefits to the American economy.

Even though Kim's drive-in produced certain economic advantages to the economy of the United States through the employment

---

**5.** See also *Factor v. Laubenheimer,* 290 U.S. 276, 295, 54 S.Ct. 191, 196, 78 L.Ed. 315 (1933), where the Court said: "And in resolving doubts the construction of a treaty by the political department of the government, while not conclusive upon courts called upon to construe it, is nevertheless of weight."

of American workers and purchase of American goods, these economic advantages alone will not make his investment "substantial". Every investment produces certain benefits to an economy by generating economic activity. Because of the advantages inherent in being a nonimmigrant treaty investor, such as avoiding the quota limitations, conditions are imposed on the type of investment which allows the investor to qualify for this preferential treatment. Aliens are not allowed to avoid quota limitations and gain other advantages granted to those holding nonimmigrant treaty investor status by a marginal investment for the sole purpose of earning a living.

What is a "substantial" investment is primarily a question to be resolved on a case-by-case basis. It is necessary also to recognize the distinction between "immigrant" and "nonimmigrant" treaty investors.

Kim relies on *Matter of Heitland,* Int. Dec. # 2259, p. 566 (1974), a case involving qualifications for "immigrant" investor status and what constitutes a "substantial" investment under C.F.R. § 212(a)(14). The Board of Immigration Appeals rejected the view that "substantial" embraced a relative concept necessitating that the investment be substantial in relation to the total capital requirements of a particular enterprise. *Matter of Heitland,* Int. Dec. # 2259, p. 566 (1974). The test of substantial investment adopted under § 212(a)(14) is that

> the investment either must tend to expand job opportunities and thus offset any adverse impact which the alien's employment may have on the market for jobs, or must be of an amount adequate to insure, with sufficient certainty, that the alien's primary function with respect to the investment, and with respect to the economy will not be as a skilled or an unskilled laborer.

*Matter of Heitland, supra* at 567.[6]

Kim contends that the policy of the 1952 Immigration and Nationality Act is to en-courage the immigration of foreign entrepreneurs who will invest money in domestic commercial enterprises that will employ workers in this country. He argues that the *Heitland* standard should be used in determining what constitutes a "substantial" investment for nonimmigrant treaty investors as well as the immigrant investor, and that if the investment tends to expand job opportunities it would be considered substantial.

But Kim's argument minimizes the essential differences between immigrant investors and nonimmigrant treaty investors. An immigrant investor intends to remain in the United States; an alien seeking nonimmigrant treaty investor status must establish his intent to depart.[7] The advantage to the immigrant investor in securing that status is that he thereby avoids the labor certification requirements. See C.F.R. § 212, 8(b)(4). The advantage to the nonimmigrant treaty investor in securing his status is that he enters the United States without complying with the quota restrictions and is not subject to exclusion or deportation on the same grounds as are immigrants. See 8 U.S.C. § 1184(b); 8 U.S.C. §§ 1151–1154; 8 U.S.C. § 1102.

The interest of the United States when an alien claims immigrant investor status is in protecting the labor force presently available in this country. The interest of the United States when nonimmigrant treaty investor status is claimed is in seeing that quota restrictions are not being circumvented by a "small investment in a marginal enterprise solely for the purpose of earning a living".

The INS has acted rationally in utilizing the State Department regulation, 22 C.F.R. § 41.41, as the standard for determining whether an investment is "substantial". The State Department regulation guides consular offices in granting visas to aliens

---

6. In dismissing Kim's appeal the Regional Commissioner noted that this case does not involve an investment by a prospective immigrant and that 8 C.F.R. § 212(a)(14) is not applicable.

7. While the District Director found that Kim had not established his intent to depart from the United States the Regional Commissioner *reversed* that finding.

from abroad seeking nonimmigrant treaty investor status. It is appropriate that the same standard be used by the INS in determining whether aliens already in this country qualify for this status.

It is undisputed that Kim depends on the profits from his drive-in restaurant and gifts from his Korean father-in-law for the support of his family. The drive-in is Kim's only asset. As found by the district court, the drive-in produced a profit of about $1,000 a month which was used to support Kim, his wife, and child. We agree with the district court that the INS did not abuse its discretion in denying Kim nonimmigrant treaty investor status on the ground that he had invested "a small amount of capital in a marginal enterprise solely for the purpose of earning a living."

### Korean Treaty

■ The preamble to the Korean treaty expresses an intention to "encourage closer economic relations . . . by arrangements encouraging mutually beneficial investments". The treaty itself provides for the treaty investor status where the nationals of either country enter to develop and direct "the operations of an enterprise in which they have invested a substantial amount of capital". The Korean treaty contains a "most favored nation" clause which requires that aliens receive the broadest rights and privileges from each signatory which it accords to any other nation in other treaties which it has made or will make. *Kolovrat v. Oregon*, 366 U.S. at 193, 81 S.Ct. 922.

Kim urges that the court in construing "substantial" as it is used in the Korean Treaty consider the Philippines Entry Rights Agreement, 6 U.S.T. 3030 (1955). This agreement resulted from an exchange of notes and may not be technically a treaty. It is cited by Kim, however, as an indication of the proper construction of the word "substantial". The Philippines Agreement provides for entry rights for those who are investing substantial amounts of capital. The Agreement defines "substantial" as follows:

The word "substantial" as used herein with reference to trade or investment shall not be interpreted to discourage particular types of investment or necessarily to exclude small traders or investors. The criteria for determining eligibility for treaty investors and treaty traders status have been influenced by considerations of preventing abuse or evasion of the two countries' immigration laws, including quota restrictions. What constitutes a substantial investment is a relative matter and is not determined alone by size of investment.

We cannot find that this definition of "substantial" is in conflict with the position of the INS giving effect to the State Department regulation (22 C.F.R. § 41.41) in defining "substantial amount of capital" as used in the Immigration and Nationality Act and the Korean treaty. Both definitions recognize that a "substantial" investment does not refer to particular types of investment; that the criteria for determining treaty investor status are influenced by immigration law, including quota restrictions; and that substantial investment is a relative term. The INS could properly conclude that an investment solely for the purpose of making a living is not substantial under the Korean treaty.

### Summary Judgment

Kim argues that the district court erred in entering summary judgment because facts regarding the profitability of the drive-in restaurant were in dispute. The court reviewed the entire record, including documents supplied by Kim which were rejected by the Regional Commissioner. The district court's determination was based on the application of the proper legal standards. Viewing the evidence in the light most favorable to Kim, the district court concluded that Kim's investment was in a marginal enterprise solely for the purpose of earning a living. Summary judgment was proper.

AFFIRMED.