752 F.2d 431
 Anthony J. NICE and Yasmin Nice, Plaintiffs-Appellants,
v.
James B. TURNAGE, Jr., District Director of the U.S.
Immigration and Naturalization Service, in his
official capacity, et al., Defendants-Appellees.
 No. 84-3715.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 6, 1984.
Decided Jan. 22, 1985.
 
 Karen L. Gilbert, Seattle, Wash., for plaintiffs-appellants.
 Mark C. Walters, James A. Hunolt, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before BROWNING, Chief Judge, GOODWIN and SKOPIL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Nice's application for a change in visa status from a "B-1 Visitor for Business" to an "E-2 Treaty Investor," was denied on the ground, among others, that he failed to prove he was the "source of funds" used to make the investment. We affirm.
 
 
 2
 8 U.S.C. Sec. 1101(a)(15)(E)(ii) (1982) requires an applicant for nonimmigrant treaty investor status to show "he has invested ... a substantial amount of capital." (Emphasis added.) INS asked Nice to explain the source of the funds he invested in the car wash. Nice proffered a $25,000 check drawn on a foreign bank signed by Nice's wife and used by Nice to make the investment. The Regional Commissioner noted several irregularities surrounding the check, including absence of proof of the identity of the principal who issued the power of attorney under which Mrs. Nice claimed to have acted in signing the check. The Commissioner concluded that Nice had failed to prove the funds invested were his own risk capital, and that the record suggested that in fact the investment had been made by Nice's father-in-law.
 
 
 3
 Nice argues that an alien can be required to establish the source of invested funds only if necessary to show that a "sham investment" is not involved. He relies on a statement in the Report of the House Committee that the treaty investor provision "is intended to provide for the temporary admission of such aliens who will be engaged in developing or directing the operations of a real operating enterprise and not a fictitious paper operation." H.R.Rep. No. 1365, 82d Cong., 2d Sess. 44, reprinted in 1952 U.S.Code Cong. & Ad.News 1653, 1697 (emphasis added). We have characterized the legislative history as "of little assistance" in determining qualifications for treaty investor status. Kun Young Kim v. District Director, 586 F.2d 713, 716 (9th Cir.1978). Certainly the passing reference in the House Report does not provide a reasonable basis for limiting the broad statutory requirement that the alien demonstrate that "he has invested" substantial capital in a local enterprise.
 
 
 4
 Nice claims he need only show the funds are in his "possession and control." He relies on a portion of a 1977 State Department Circular Instruction stating that if an alien "can satisfactorily establish that he possessed and exercised dominion over the money invested, the manner in which it was originally acquired would be irrelevant." On its face, the Circular addresses only 22 C.F.R. Sec. 42.91(a)(14)(ii)(d) (1983), an unrelated regulation not at issue here. Moreover, other portions of the Circular indicate that the INS is expected to investigate the source of funds to determine whether the alien placed his own funds at risk.
 
 
 5
 Nice's interpretation of Sec. 1101(a)(15)(E)(ii) would permit wholesale evasion of immigration quotas through the treaty investor provision. An alien could claim nonimmigrant treaty investor status merely by acting as a "front" for an investment in fact made by a third party.
 
 
 6
 We conclude the district court correctly held that INS could require proof that Nice was personally at risk and did not abuse its discretion in concluding that the proof offered by Nice was insufficient.
 
 
 7
 AFFIRMED.