**Kyung Woon CHOI, Appellant,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Appellee.**

**No. 85–2476.**

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1986.

Decided Aug. 20, 1986.

Michael. D. Gragert, Wichita, Kan., for appellant.

Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Kyung Woon Choi, a citizen of Korea, appeals from an order of the district court affirming the decision of the Immigration and Naturalization Service (INS) to deny him extension of treaty investor status. We reverse and remand for further proceedings.

## I. BACKGROUND.

In 1982, the INS approved Choi's application to enter this country as a nonimmigrant with treaty investor status.[1] Such status entitles a foreign national to enter the United States if he can show that his purpose is "solely to develop and direct the operations of an enterprise in which he has invested * * * a substantial amount of capital."' 8 U.S.C. § 1101(a)(15)(E)(ii) (1982). Choi's treaty investor application was approved for one year to July 6, 1983, upon his submission to the INS of a proposed partnership agreement with Jin K. Lee, a native of Korea and naturalized citizen of the United States. That agreement called for Choi to invest $40,000 to open and manage an oriental gift shop in Springfield, Missouri.

In June 1983 Choi applied to extend his temporary stay. The District Director denied his application on August 12, 1983, on the ground that Choi did not have a majority interest[2] and did not control the busi-

---

1. A treaty investor alien must intend to remain only temporarily and eventually return to his country when his treaty status ends. 22 C.F.R. § 41.41 (1985).

2. One of Choi's immigration status reports indicated that 60% of the enterprise was owned by a

ness under the language of the proposed partnership agreement. Choi's Motion to Reopen and Reconsider was also denied on the ground that Choi did not "solely * * * develop and direct the operation of" the gift shop enterprise. Relying on the wording of the proposed partnership agreement submitted by Choi, the District Director concluded that Lee, not Choi, had the exclusive right to decide all financial and business policies of the enterprise.

Choi thereupon filed his petition for review in the district court. The court concluded that the District Director erred in rejecting Choi's application solely on the basis of the language of the proposed partnership agreement, and on January 16, 1985, remanded the matter to the INS for further consideration of additional evidence Choi had filed with his motion for reconsideration. This evidence included his partnership tax return, affidavits explaining the roles Lee and Choi played in the enterprise, and material explaining certain erroneous answers on INS forms.

On June 6, 1985, the District Director issued his opinion on remand, again denying Choi's application but adding new grounds as a basis for his decision. In addition to reiterating his position that Choi failed to establish that he had a sufficient amount of control over the gift shop enterprise, the District Director also concluded that Choi had failed to establish (1) that he had other income or other available resources, (2) that he had made a substantial investment in the gift shop, and (3) that he owned a majority interest in the enterprise, which included three other stores owned by Lee, rather than only the Springfield store owned by Lee and Choi.

The district court denied Choi's second petition for review, concluding that Choi had failed to offer additional evidence on remand and had failed to meet his burden of proof. This appeal followed.

United States citizen, whereas it should have shown that the 60% was owned by Choi. The District Director's conclusion that Choi did not

## II. DISCUSSION.

The primary issue on appeal is whether the District Director erred in determining that Choi failed to meet his burden of establishing 1) that his investment was not solely for the purpose of earning a living, and 2) that he developed and directed the gift shop enterprise, and therefore he was not entitled to renewal of his treaty investor status.

■ A change in treaty investor status is within the discretion of the INS. *Patel v. Minnix*, 663 F.2d 1042, 1043 (11th Cir. 1981). Our review is therefore limited to determining whether the INS's non-renewal of Choi's treaty investor status was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. *Kun Young Kim v. District Director*, 586 F.2d 713, 716 (9th Cir.1978); *Richards v. I.N.S.*, 554 F.2d 1173, 1177 & n. 30 (D.C.Cir. 1977). *See also Achacoso-Sanchez v. I.N.S.*, 779 F.2d 1260 (7th Cir.1985).

■ An administrative agency's exercise of its discretion cannot be "unreasoned or arbitrary." *I.N.S. v. Rios-Pineda*, 471 U.S. 444, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985). Courts reviewing discretionary agency action must evaluate, among other things, the agency's treatment of the evidence. *Coriolan v. I.N.S.*, 559 F.2d 993, 998 (5th Cir.1977). *See also Bowman Transportation v. Arkansas-Best Freight System*, 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). The agency must have observed the necessary procedural requirements including the consideration of all relevant facts available in the administrative record as a whole. *See American Federation of State, County and Municipal Employees v. City of Cleveland*, 484 F.2d 339, 346, 348 (6th Cir. 1973).

■ We conclude that the INS failed in this instance to consider all relevant facts. We turn first to a consideration of the agency's conclusion that Choi failed to

have a majority interest was based solely on this erroneous information.

meet his burden of showing that he did not operate the gift shop solely for the purpose of earning a living.[3] This conclusion was a significant factor in the District Director's non-renewal decision.

The record on this question clearly is not complete. Throughout the proceedings, Choi asserted that he furnished the original stock certificates of his shares in Shin Woo Transportation Company of Seoul, Korea, to the INS office in Kansas City, Missouri.[4] Even though Choi repeatedly asserted that he had furnished the stock certificates as proof of other sources of income and as proof therefore that he was not participating in the gift shop enterprise solely to make a living, the INS ignored his assertions, stating that Choi had failed to offer evidence of other income. It was not until after oral argument that the attorney for the government advised this court of the existence of a letter in the INS file referring to the apparent forwarding of the original stock certificates to the United States Embassy in Seoul, Korea, on May 5, 1983. Therefore, the decision was not based on a consideration of the full administrative record.

We are also troubled by the seeming peremptoriness of the District Director's analysis of whether Choi proved that he developed and directed the operations of the gift shop within the meaning of § 1101(a)(15)(E)(ii). The phrase "develop and direct" is not defined in the statute or regulations, nor have either the case law or INS rulings to date served to fully clarify the issue. Note 11 to 22 C.F.R. § 41.41, 9 *United States Department of State Foreign Affairs Manual* (1983) (hereinafter cited "F.A.M.") states simply that "[t]o

meet the 'develop and direct' requirement, the alien should have 'controlling interest' in the enterprise."[5] The note goes on to indicate generally that an interest of less than 51% usually means that the investor does not have a controlling interest. Thus, one of the elements of proof on this issue is majority ownership. Until the district court's remand, the only question raised by the District Director on the majority interest question was whether Choi or Lee owned over 60% of the enterprise.

On remand, however, for the first time in these protracted proceedings, the District Director took the position that the "enterprise" included not only the gift shop in Springfield, Missouri, in which Choi had over a 60% interest, but also three other gift shops owned by Lee. Because Choi did not have a majority interest in the entire enterprise so defined, the District Director concluded that he did not develop and direct the enterprise.

■ Thus, the District Director changed positions without giving Choi any indication of the change or opportunity to respond. Note 25 of the Treaty Investor Guidelines, published by the United States Department of State, *Visa Office Bulletin*, Volume 5, Number 20 (1982), reproduced in 59 *Int. Rel.* 264 (1982), provides that "when in doubt, the applicant should be able to explain and document the transaction to the consular officer's satisfaction." Note 13 to 22 C.F.R. § 41.41, 9 F.A.M., while observing that the burden of proof rests with the alien, also reaffirms agency practice of soliciting additional information if necessary, stating that "[i]f the alien's qualification for [treaty investor] status is uncertain, the

**3.** This requirement originates in 22 C.F.R. § 41.41 (1985) which provides in pertinent part that an alien seeking treaty investor status must not be "seeking to proceed to the United States in connection with the investment of a small amount of capital in a marginal enterprise solely for the purpose of earning a living."

**4.** He did so to satisfy inquiries made by the U.S. Embassy in Seoul, Korea, regarding the propriety of the initial decision that Choi be given treaty investor status. The Embassy questioned the initial decision when Choi's wife and chil-

dren applied for visas to enter the United States and join Choi. That decision was subsequently upheld by the INS office in Kansas City, and Choi's family joined him here. Only months later, Choi filed his first application for extension. The INS employee to whom Choi gave the documents is now deceased.

**5.** The INS has adopted the State Department's regulations and guidelines. *See, e.g., Kun Young Kim,* 586 F.2d at 717; *Tokyo Sansei v. Esperdy,* 298 F.Supp. 945, 946 (S.D.N.Y.1969).

consular officer may request whatever additional documentation is needed to overcome that uncertainty." While it is within the District Director's discretion to decide whether additional information should be obtained, clearly the better practice here would have been for the Director to indicate his new position to Choi, rather than change the underlying rationale for the decision without notice.

The District Director's failure to seek additional information takes on added significance when considered in light of his failure to evaluate Choi's evidence of other income, and in light of the complexity involved in analyzing the "develop and direct" issue. It is clear that the alien's actual control over the business affairs of that enterprise is a key element. In Note 19 of the Treaty Investor Guidelines, the Department cited *Matter of Lee*, 15 I & N Dec. 187 (1975), for the proposition that if the alien cannot show a controlling interest, "other individuals ... are in a position to dictate how the enterprise is to be developed and directed, irrespective of the alien investor's wishes."

The INS at one point had taken the position that Choi's application must fail because he did not have total control over the enterprise. The statute, regulations and case law do not support the Director's position. However, as the District Director stated in his opinion on remand, there are features of the Lee-Choi business relationship that are troublesome when viewed in terms of the amount of Choi's control.[6] On the other hand, Choi has invested a significant amount of money, and no reasonable person could conclude that he is only a manager.

Choi's burden on remand will be heavy. However, we are convinced that, because the District Director clearly did not consider all the facts in the record, and because the elements of the "develop and direct" issue are so intertwined, further proceedings are necessary. On remand, the District Director should engage in a more thoughtful analysis, and frame the "develop and direct" issue in terms of the purposes of the treaty investor provision. As Note 25 of the Treaty Investor Guidelines states:

> [C]onsular officers must be attuned to the fact that the modern business world is exceedingly complex and that myriad varying commercial situations will confront them ... A consular officer should ... draw on his own background knowledge of the U.S. business scene, and his own common sense, as he reviews these sometimes complex commercial transactions; ... In sum, the Department's goals are flexibility and fairness in the adjudication of [treaty investor] applications, while at the same time assuring that applicants are not, in truth, seeking to circumvent the numerical limitations on immigrants. The comments in this bulletin should serve as guideposts, but are not meant to be interpreted in such a strict or rigid fashion as to foreclose [treaty investor] status to bona fide investors.

We therefore remand this matter to the district court,[7] and direct it to remand this case to the INS for further proceedings consistent with this opinion.

---

6. Lee, in an affidavit, stated that he was in charge of preparation of tax forms, public relations, transactions with financial institutions, and purchases for all four stores. Lee apparently has a better command of the English language than Choi.

7. At the same time, however, we reject Choi's contention that the INS should be estopped from denying him an extension of treaty investor status. Assuming that estoppel is even applicable in immigration cases, see *I.N.S. v. Miranda*, 459 U.S. 14, 19, 103 S.Ct. 281, 283–84, 74 L.Ed.2d 12 (1982), Choi has not made the necessary showing of affirmative misconduct.