**Egil D. LAUVIK, Plaintiff–Appellant,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE,
Defendant–Appellee.**

No. 88–4246.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1989.

Decided Aug. 9, 1990.

---

Stephen A. Johnston, Law Offices of Dan P. Danilov, Seattle, Wash., for plaintiff-appellant.

William H. Rubidge, Asst. U.S. Atty., Tacoma, Wash., for defendant-appellee.

Before CANBY, WIGGINS and FERNANDEZ, Circuit Judges.

CANBY, Circuit Judge:

The district court granted summary judgment to the Immigration and Naturalization Service (INS), affirming the denial of Egil Lauvik's request for an extension of treaty investor status. Lauvik appeals. We reverse and remand.

## BACKGROUND

Egil Lauvik, a citizen of Norway, invested $150,000 as a down payment on the purchase of a $375,000 motel/trailer park in Westport, Washington. INS granted him permission to stay one year as an E–2 nonimmigrant treaty investor. INS later extended his status for an additional year. On his application form, Lauvik wrote that he came to the United States "to immigrate to U.S.A. and go in bussiness [sic]." In the space for "date to which extension is requested," Lauvik wrote "4 more years till I get my citizenship," but then crossed that out and wrote "1 year."

On Lauvik's application for a second one-year extension, he listed $212 weekly income from the business and described his duties as "manage and do all work and repairs, rent rooms and trailer spaces, yard work, plombing [sic], etc." The INS District Director denied Lauvik's second extension request. INS found that Lauvik did not intend to depart the United States upon termination of his status and that Lauvik's duties gave him the status of a skilled or unskilled laborer rather than that of a treaty investor. Lauvik filed two unsuccessful motions to reconsider. He provided evidence of property and investments in Norway to show his intent to return there. His Norwegian assets included a $100,000 furnished home leased yearly, a $45,000 waterfront property co-owned with his brother, and over $6,000 in bonds and bank accounts. The INS District Director concluded that this additional financial information showed that Lauvik's investment in the United States, whether or not it was substantial, was his sole source of income and that precluded treaty investor status. Having exhausted all administrative remedies, Lauvik sought relief in district court. The district court granted the INS motion for summary judgment, and dismissed Lauvik's cross-motion for summary judgment. Lauvik appeals.

## ANALYSIS

1. *Standard of Review*

We review a grant of summary judgment de novo to determine whether, with the evidence viewed in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether

the district court applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989). The district court, in turn, was under a duty to set aside the decision of the INS if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[1]

■ The district court found no abuse of discretion because it concluded that there was *some* evidence to support the INS District Director's findings. The district court relied on *Song Jook Suh v. Rosenberg,* 437 F.2d 1098 (9th Cir.1971), which stated that "[a]buse of discretion may be found only if there is *no* evidence to support the decision or if the decision is based on an improper understanding of the law." *Id.* at 1102 (emphasis added). We have said, however, that this reference to "no evidence" cannot be read literally. *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305, 1308 (9th Cir.1984). It cannot be read to mean any evidence, no matter how little. *Id.* There is some point at which evidence, though it exists, becomes so slight and so thoroughly outweighed by contrary evidence, that it would be an abuse of discretion to base a decision upon it.

Lauvik argues, with considerable force, that the findings of the INS must be supported by "substantial evidence." *See id.* at 1309. We need not decide whether that is the standard that the INS must meet, however, for in this case the evidence in support of the INS' decision fell below not only that standard, but below any lesser standard that we might reasonably employ.

2. *Intention to Depart*

■ A treaty investor is a nonimmigrant who enters the United States "solely to develop and direct the operations of an enterprise in which he has invested ... [a] substantial amount of capital." 8 U.S.C. § 1101(a)(15)(E)(ii). INS determined that Lauvik did not intend to depart the United States upon termination of his treaty investor status, as required by 22 C.F.R. § 41.51(b)(2).

Lauvik wrote on a form that he wanted an extension of his status for "4 more years till I get my citizenship." Lauvik disavowed those words by drawing a line through them. Such crossed out and disavowed words shed little light on Lauvik's true intentions.

Lauvik also wrote that he came to the United States, "to immigrate to U.S.A. and go in bussiness [sic]." INS points to those words as showing his intent to permanently settle here.

We note that Lauvik filled out the form in English, his second language, without benefit of counsel. There was no evidence that Lauvik could distinguish in English between an alien who "immigrates" permanently, and one who enters as a "nonimmigrant" for a temporary stay. To the contrary, Lauvik's affidavit stated that he had been "under the impression that merely investing in business meant 'immigrating' to the United States ... [and he] did not know the difference between an immigrant and nonimmigrant, and merely intended to show that [he] was 'proceeding' to the United States to set up a business."

■ At most, Lauvik may have *wanted* to remain permanently, but there was no evidence that he *intended* to remain if that was not legally possible. On the contrary, Lauvik provided evidence of his furnished

---

1. Denials of treaty investor status have been reviewed without stating the standard, reviewed for abuse of discretion, reviewed for both arbitrary and capricious decisions and abuse of discretion, and reviewed to determine whether agency applied the wrong legal standard. *Nice v. Turnage,* 752 F.2d 431, 432 (9th Cir. 1985) (found no abuse of discretion); *Hyun Joon Chung v. INS,* 720 F.2d 1471 (9th Cir.) *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984) (the court found substantial evidence to support the denial of treaty investor status, but did not state that as the amount of evidence necessary); *Yiu Tsang Cheung v. District Director,* 641 F.2d 666, 668 (9th Cir.1980) (review limited to determining whether agency applied the proper legal standard); *Kun Young Kim v. District Director,* 586 F.2d 713, 716 (9th Cir. 1978) (review for arbitrary or capricious decision or abuse of discretion); *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir. 1971) (abuse of discretion found only if no evidence to support decision).

home and other investments in Norway to show his intent to return there if he must.[2] The INS District Director ignored the long line of precedent holding that an alien's desire to remain in the United States does not negate his intent to depart upon termination of his temporary status. *See Bong Youn Choy v. Barber*, 279 F.2d 642, 645–646 (9th Cir.1960) (even though an alien wanted to finish his and his children's education in America, he only intended to stay temporarily as a visitor unless he could arrange a permanent legal stay); *see also Brownell v. Carija*, 254 F.2d 78, 80 (D.C. Cir.1957) (nonimmigrant who entered for travel through the United States "does not become an unlawful entrant because he entertains a desire, purpose or intent to remain here if the laws of the country permit him to do so. Such a purpose, so limited, could at best be only a hope."); *see also Chryssikos v. Commissioner of Immigration*, 3 F.2d 372, 375 (2nd Cir. 1924) (When a new bride entered the United States on a visitor's visa with her permanent resident husband, the court decided that she intended to depart when her visa expired, and to return only after her husband became a citizen. "[P]roof of a desire to stay is not proof of an intent to stay."); *see also Matter of H— R—*, 7 I & N Dec. 651, 654 (1958) ("The fact that the applicant previously expressed a desire to enter the United States as an immigrant—and may still have such a desire—does not of itself preclude the issuance of a nonimmigrant visa....")

We conclude that the INS District Director abused his discretion by finding that Lauvik was not "a bona fide immigrant intent upon departing upon termination of his status."

### 3. Labor Inconsistent with Treaty Investor Status

■ INS found that Lauvik engaged in unskilled or skilled labor inconsistent with his treaty investor status. A treaty investor "competes with other entrepreneurs to sell goods and services, but he does not compete directly in the market as a skilled or unskilled laborer." *See Cheung v. District Director*, 641 F.2d 666, 670 (9th Cir. 1980) (optometrist's income primarily from labor, so not a treaty investor); *see also Matter of Udagawa*, 14 I & N, Dec. 578 (BIA 1974) (a tempura chef, with no personal funds invested, not entitled to treaty investor status.); *see also Matter of Ruangswang*, 16 I & N, Dec. 76, 80 (BIA 1976) (an alien who invested $13,000 in a dry cleaning business was not a treaty investor because what she called $1,000 monthly net profit was actually payment for her full-time labor).

However, Lauvik may perform some menial tasks without negating his treaty investor status if he primarily acts to direct, manage, and protect his investment. *See Matter of Ahmad*, 15 I & N, Dec. 81, 83 (BIA 1974) ("In many instances a *bona fide* investor will properly be able to engage in activities of a skilled or unskilled nature."); *see also Matter of Ko*, 14 I & N, Dec. 349, 350–351 (BIA 1973) (A treaty investor could work as a cashier in his own shoe store without labor certification.)

■ Lauvik is most similar to the alien who purchased and ran a small motel in *Bhakta v. INS*, 667 F.2d 771 (9th Cir. 1982) (holding that the alien did not engage in unauthorized employment). We compared the motel owner in *Bhakta* to a treaty investor who competed with other entrepreneurs, but did not compete in the job market for skilled or unskilled labor.

**2.** We note that E–2 treaty investors need not maintain a foreign home, but that Lauvik has done so. Although some nonimmigrants, such as students and visitors, must have an intent not to abandon a foreign residence, the Supreme Court found it significant that other nonimmigrants have no such requirement. "Congress' silence ... mean[s] that Congress, while anticipating that permanent immigration would normally occur through immigrant channels, was willing to allow nonrestricted nonimmigrant aliens to adopt the United States as their domicile." *Elkins v. Moreno*, 435 U.S. 647, 666, 98 S.Ct. 1338, 1349, 55 L.Ed.2d 614 (1978) (holding that no federal law prevented a G–4 nonimmigrant from having a state "domicile"). A nonimmigrant who enters as an employee or officer of an international treaty organization can "develop a subjective intent to stay indefinitely in the United States ... without violating the 1952 Act, the Service's regulations, or the terms of his visa." *Id.*

*Id.* at 773 (*quoting Cheung v. District Director,* 641 F.2d at 670). Similarly, Lauvik contends that he competes with other entrepreneurs for the sale of motel rooms and trailer spaces, not with individuals seeking maintenance work.

Lauvik invested $150,000 initially as a down payment on the purchase of his business. The total purchase price was $375,-000. At the time of his motion to reconsider, he had paid an additional $67,500 toward the remaining debt and over $50,000 on business expenses and improvements. Lauvik did not invest over $250,000 in order to take a skilled or unskilled job away from an American citizen. Lauvik claims that INS ignored evidence that the former owners and a resident caretaker help maintain the motel/trailer park. We conclude that Lauvik is far more like the motel owner in *Bhakta* who competes with other entrepreneurs for the sale of rooms, than he is like the chef in *Udagawa* who takes jobs away from American citizens or the dry cleaner in *Ruangswang* who is paid for her labor. INS erred by not considering all relevant factors and assuming that all skilled and unskilled labor is inconsistent with treaty investor status. *See Dong In Chung v. U.S. I.N.S.,* 662 F.Supp. 474, 476 (W.D.Wash.1987).

### 4. *Lauvik's Investment as His Sole Source of Income*

INS found that Lauvik's investment, whether or not it was substantial, was his sole source of income. A treaty investor must make a substantial investment, as "distinct from a relatively small amount of capital in a marginal enterprise solely for the purpose of earning a living." 22 C.F.R. § 41.51(b). Notes to this regulation suggest that an investment is marginal if it only provides a livelihood for the treaty investor and his family, and does not expand local job opportunities. Dept. of State Foreign Affairs Manual, Vol. 9, Note 5.4 to 22 C.F.R. § 41.51. Lauvik hires a resident caretaker.

Lauvik's investment is not marginal and solely for earning a living if he has other substantial assets. *See Matter of Kung,* 17 I & N, Dec. 260, 262 (BIA 1978) (a treaty investor's $53,000 investment was not marginal and solely for the purpose of earning a living, when he had $46,000 in additional assets); *see also Choi v. INS,* 798 F.2d 1189 (8th Cir.1986) (remanded because INS did not consider evidence of stock ownership when it concluded that alien's gift shop was his sole source of income); *see also Dong In Chung v. INS,* 662 F.Supp. 474, 476 (W.D.Wash.1987) (remanded because INS ignored a $420 monthly pension, $75,000 real estate, and over $100,000 liquid assets when it concluded that the alien's investment was solely for the purpose of making a living); *compare Kun Young Kim v. District Director,* 586 F.2d 713 (9th Cir.1978) (investment was marginal and solely to earn a living when an alien earned $1,000 monthly on his $11,500 restaurant investment and he had no other assets).

Lauvik listed his income from the business as only $212 weekly. The record is not clear whether that amount represents the net profit from the business, or whether it was the amount Lauvik chose to draw at that time. We note that business owners may choose to draw small amounts from a new business, in hopes of reaping greater benefits later. Regardless, Lauvik also received income from the lease of his $100,000 Norwegian home, co-owned a $45,-000 waterfront property, and had bonds and bank accounts worth more than $6,000. We conclude that he had substantial assets other than his investment, and that INS abused its discretion by failing to follow its own precedent in *Kung.*

### CONCLUSION

We conclude that the district court erred in granting summary judgment, because Lauvik presented evidence that INS abused its discretion in denying him an extension of treaty investor status. We reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.