949 F.2d 399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sun Hee HAN, Plaintiff-Appellant,
v.
Roy L. HENDRICKS, Acting District Director, Immigration and
Naturalization Service, Honolulu, Hawaii,
Defendant-Appellee.
 No. 90-16164.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 6, 1991.*
Decided Dec. 10, 1991.
 
 Before ALARCON, D.W. NELSON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 On August 8, 1987, Sun Hee Han ("Han") arrived in Hawaii from Korea on a B-2 nonimmigrant for pleasure visa, set to expire on February 7, 1988.
 
 
 3
 On August 26, 1987, Han and her husband formed Khan Enterprises, a Hawaii corporation, with $150,000. After its incorporation, Khan Enterprises remained inactive. On January 7, 1988, Han and her husband entered into a Deposit, Receipt, Offer and Acceptance ("DROA") contract to purchase the Market for $415,000. The Han's deposited $1,000 in earnest money and an additional $5,000 upon acceptance.[1]
 
 
 4
 On January 22, 1988, Han applied for a change in visa status, to E-2, a treaty investor under 8 U.S.C. § 1101(a)(15)(E)(ii). Around March 1, 1988, Han purchased the Market. She sold it one year later for $960,000. The proceeds from the sale were invested in Khan Enterprises with the intent to start a construction business.[2]
 
 
 5
 On July 25, 1989, the INS denied Han's application on the basis that she has "not invested a substantial amount of capital in any enterprise." Han was ordered to leave the country by August 14, 1898.
 
 
 6
 On August 11, 1989, Han filed a motion to reconsider her application. This motion was based on Han's current involvement in Khan Enterprises. The INS denied the motion on September 1, 1989, because "the facts of this case remain essentially as they were" at the time of the previous application.
 
 
 7
 Han then filed a motion for declaratory and injunctive relief in the district court. Both Han and the INS filed motions for summary judgment. The district court granted the INS's motion, holding that the INS' actions were not arbitrary, capricious or an abuse of discretion. The district court concluded that: 1) the INS correctly denied Han's initial application; 2) the motion for reconsideration was in effect a new application; 3) Han was ineligible to file a new application because her visa had expired; and 4) the INS correctly concluded that Han's investment in Khan Enterprises did not qualify her as a treaty investor because she was not in the process of investing nor had she invested a substantial amount of capital.
 
 STANDARD OF REVIEW
 
 8
 A grant of summary judgment is reviewed de novo, and will be reversed if there are any genuine issues of material fact or if the proper substantive law was not applied. The district court will reverse INS decisions only if they are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Lauvik v. INS, 910 F.2d 658, 659, 660 (9th Cir.1990) (citations omitted).
 
 DISCUSSION
 
 9
 1. Was the INS correct in denying Han's initial application to change her visa status to that of a treaty investor based on her investment in the Market?
 
 
 10
 To qualify as a treaty investor, a person must "develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital."[3] 8 U.S.C. § 1101(a)(15)(E)(ii) ("section 1101"). Han has the burden of proof in establishing her claim. The proof "must be unambiguous and doubts should be resolved against the investor claimant." Kim v. District Director, 586 F.2d 713, 716 (9th Cir.1978).
 
 
 11
 The district court correctly determined that the INS had not abused its discretion in determining that Han had not invested substantial capital. "Investment" is defined as "the placing of funds or other capital assets at risk in the commercial sense in the hope of generating a return on the funds risked. If the funds are not subject to partial or total loss if investment fortunes reverse, then it is not an investment" in the sense intended by section 1101. 9 FAM § 41.51 N5.1-1. "Process of investing" means that the "alien must be close to the start of actual business operations, not merely in the stage of signing contracts (which may be broken) ..." Id.
 
 
 12
 Han claims that the signing of the DROA "irrevocably committed" her capital toward purchase of the market.[4] Even though the sale ultimately closed, at the time Han filed the application, she had only placed $6,000 at risk. If the seller failed to perform, Han could have sued for damages or specific performance. Resolution of the lawsuit could take years, therefore Han would not be close to the start of actual operations. If Han failed to perform, the seller could have sued for damages or kept Han's $6,000 deposit as liquidated damages. If the seller decided to sue, Han could be liable for the entire amount. Again, it would be years before Han began operations and Han's breach would be an indication that she did not "intend to direct or develop a commercial enterprise." 1 Charles Gordon & Stanley Mailman, Immigration Law and Practice § 17.06[b] (1991). Furthermore, the $6,000 deposit is not substantial when compared to the $415,000 purchase price. "Substantial" is defined by using a proportionality test. The amount invested should be weighed against "either 1) the total value of the particular enterprise in question, or 2) the amount normally considered necessary to establish a viable enterprise of the nature contemplated." 9 FAM § 41.51 N5.3-1. Here, Han only had $6,000 at risk, less than 2% of the total purchase price.[5]
 
 
 13
 2a. Did the district court err in determining that Han's motion for reconsideration was in effect a new application rather than a supplement to Han's initial application?
 
 
 14
 After her initial application was denied, Han filed a motion for reconsideration. The INS denied the motion because the "facts in this case remain essentially as they were at the denial of the previous request for change of nonimmigrant status."
 
 
 15
 The district court correctly treated the motion for reconsideration as a new application rather than as a supplement to the initial application. If a motion to reconsider "raises a new fact and a new legal argument ... [t]he motion is a new application." Shon Ning Lee v. INS, 576 F.2d 1380, 1381 (9th Cir.1978) (motion to reopen deportation proceeding based on information not included in original application). The motion attempted to persuade the INS that Han's investment in Khan Enterprises qualified her as a treaty investor. It was not based on Han's prior investment in the Market. Although both the application and the motion attempt to prove that Han was a qualified investor under section 1101, they were based on two separate investments and are to be considered two separate applications.
 
 
 16
 When Han filed the motion to reconsider, her B-2 visa had expired. An applicant must possess a current visa when requesting a change in status. 8 U.S.C. § 1258. Because her nonimmigrant status had expired, Han was ineligible to file a new application requesting a change in status. Although the INS decided the motion on its merits, it was not required to do so.
 
 
 17
 2b. Was the INS correct in denying Han's motion for reconsideration on the basis of her investment in Khan Enterprises?
 
 
 18
 The INS concluded, and the district court agreed, that Han's investment in Khan Enterprises did not qualify her as a treaty investor. Han first claimed that she was a qualified investor as a result of her purchase of the Market and this qualification did not change when the Market was sold. However, Han was not qualified when she filed her application based on the purchase of the Market. In addition, once the Market was sold, it could no longer be the basis for her application. See Kim v. Meese, 810 F.2d 1494 (9th Cir.1987). Han also claimed that Khan Enterprises was a qualifying investment in its own right. Although Han was invested a large amount of money, approximately $650,000, Khan Enterprises was not an active enterprise at the time of her initial application. While Han claims that Khan Enterprises was "ready" to begin operations at the time of her motion for reconsideration, we need not determine the accuracy of that claim. By the time her motion for reconsideration, Han's B-2 visa had expired and she was ineligible to change her status to that of a treaty investor.
 
 CONCLUSION
 
 19
 For the foregoing reasons, the district court's grant of summary judgment for the INS is AFFIRMED.
 
 
 
 *
 The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 $180,000 was to be paid at closing with the remainder due over the next five years
 
 
 [2]
 Han did not inform the INS about the completed purchase of the Market, its sale or the investment of the proceeds in Khan Enterprises until after Han's application was denied
 
 
 [3]
 In addition, section 1101 requires the applicant to be a national of a country which has a commerce treaty with the United States. This requirement is not at issue. The applicant must also possess a valid nonimmigrant visa at the time of application. 8 U.S.C. § 1258. This requirement is discussed infra
 
 
 [4]
 Han claimed the district court should have considered an affidavit first filed with her motion for summary judgment. The affidavit stated that the DROA was a valid binding contract from which serious consequences would emerge if either party failed to perform. However, a district court is not permitted to consider evidence outside the administrative record in order to determine the correctness of an agency decision. Asarco v. USEPA, 616 F.2d 1153, 1160 (9th Cir.1980)
 
 
 [5]
 Although Han did have $150,000 invested in Khan Enterprises at this time, this investment was not placed at risk. Khan Enterprises was an inactive corporation in early 1988. "The enterprise must be a real and active commercial or entrepreneurial undertaking.... It cannot be a paper organization ..." 9 FAM § 41.51 N5.2