Beadin AJURULLOSKI, Petitioner,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE and A.D. Moyer, District Director, Respondents.

No. 87 C 6403.

United States District Court, N.D. Illinois, E.D.

June 9, 1988.

Donald E. Puchalski, Doss, Puchalski & Keenan, Ltd., Chicago, Ill., for petitioner.

Anton R. Valukas, U.S. Atty., Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Beadin Ajurulloski ("Ajurulloski") has filed a petition for a writ of habeas corpus against the Immigration and Naturalization Service ("INS") and its District Director A.D. Moyer ("District Director"). Ajurulloski concedes his deportability but claims that the District Director abused his discretion when he refused to extend Ajurulloski's voluntary departure date.

1. The order to show cause alleged that Ajurulloski entered the United States without inspection near San Ysido, California, on or about March 31, 1986, in violation of § 241(a)(2) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1251(a)(2). (Administrative Record at p. 14) (hereinafter "A.R.").

2. Government Form EOIR–6 completed and signed by the Immigration Judge, represents the order granting voluntary departure. The order provided for automatic deportation without fur-

Presently pending before the Court is the respondents' motion to dismiss the petition on the ground that this Court lacks subject matter jurisdiction, or alternatively, that the District Director did not abuse his discretion in denying Ajurulloski an extension. For the reasons set forth below, the respondents' motion is granted.

### II. FACTS

The facts are not in dispute. Ajurulloski, a native of Yugoslavia, entered the United States without inspection. On March 31, 1986, agents of the INS arrested Ajurulloski, and an order to show cause was issued alleging his deportability.[1]

At his first hearing on May 23, 1986, Ajurulloski sought an extension for the purpose of filing an application for asylum. (A.R. at p. 8). The Immigration Judge continued the hearing until June 23, 1986. The Judge granted Ajurulloski two additional extensions, however, Ajurulloski failed to apply for asylum.

At the next hearing on January 20, 1987, Ajurulloski, represented by counsel, indicated that he no longer intended to apply for asylum. Ajurulloski conceded his deportability and requested that the INS allow him to voluntarily depart the United States as an alternative to deportation. Ajurulloski made his request in order to continue his medical therapy and pursue a workers' compensation claim brought after he suffered a work-related knee injury in October, 1986. The Immigration Judge issued an order allowing Ajurulloski to voluntarily depart the United States by July 20, 1987.[2]

On July 16, 1987, Ajurulloski appeared at the INS office and requested that the District Director extend his voluntary departure date.[3] Once again, Ajurulloski

ther notice or hearing in the event that Ajurulloski failed to leave the country on his voluntary departure date.

3. Although the Immigration Judge granted Ajurulloski voluntary departure as an alternative to deportation, the District Director retained authority to grant an extension of that date. 8 C.F.R. § 244.2 provides in pertinent part: "Authority to extend the time within which to depart voluntarily specified initially by [an immi-

claimed that he needed additional time to continue medical treatment and to pursue the workers' compensation claim. In support of this request, Ajurulloski submitted letters from his attorney, physical therapist and orthopedic surgeon. (A.R. at pp. 3–5).[4]

In denying the extension, the District Director found that Ajurulloski walked without the use of artificial aids, and was thus sufficiently mobile to travel. (A.R. at p. 1). Furthermore, the District Director found that the evidence indicated that Ajurulloski would not require additional surgery and that he could continue his physical therapy in Yugoslavia. (A.R. at p. 1). Finally, the District Director indicated that Ajurulloski could pursue his workers' compensation claim through his attorney in the United States. (A.R. at p. 1).

Ajurulloski filed the instant petition on July 20, 1987, the last day provided for his voluntary departure from the United States, claiming that the District Director abused his discretion when he failed to extend the voluntary departure date.

## III. SUBJECT MATTER JURISDICTION

### A. Generally

■ The first issue the Court must address is whether a district court is the proper forum for a review of a district director's denial of an extension of an alien's voluntary departure date. Section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a), confers exclusive jurisdiction over all final orders of deportation upon the Courts of Appeal. *Foti v. Immigration and Naturalization Service*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281

(1963). However, § 106(a)(9)[5] allows an alien to appeal a discretionary decision of the district director to the district court through a habeas corpus proceeding if that alien is held in custody pursuant to a final order of deportation. *Cf., Cheng Fan Kwok v. I.N.S.*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968).

Ajurulloski does not challenge the validity of the deportation order, or the proceeding in which it was entered. He merely seeks review of the District Director's denial of an extension of the voluntary departure date. It is clear under the pertinent regulation that a grant of such relief is a discretionary determination. Both parties ignore a Ninth Circuit decision on this issue—*Flores v. United States Immigration and Naturalization Service*, 524 F.2d 627 (9th Cir.1975). In *Flores*, the Ninth Circuit affirmed the district court's determination that the district director had abused his discretion when he denied an application for an extension of the voluntary departure date. Although the Ninth Circuit did not specifically address the question of either the district court or its own subject matter jurisdiction, its silence on such a basic yet essential point demonstrates its confidence that the district court was acting within its jurisdictional mandate. This Court holds that Ajurulloski's petition falls within the narrow jurisdictional grant provided in § 106(a)(9) for review by this Court so long as all the other requirements of § 106(a)(9) are met.

### B. Custody

■ The second issue before the Court is whether the petitioner is "in custody" for purposes of § 106(a)(9) habeas corpus jurisdiction. The government argues that actu-

gration judge] or the Board is within the sole jurisdiction of the district director."

**4.** The letter from Ajurulloski's attorney dated July 13, 1987, provides in pertinent part: "I understand that [Ajurulloski] will still be undertaking theraphy [sic] for the next four months. I will not be able to have a hearing on his claim filed with the Industrial Commission until after he has completed all his theraphy [sic] and rehabilitation. Consequently, I dont [sic] expect a resolution of this claim for approxi,etly [sic] six to seven months." (A.R. at p. 3). The letter from Ajurulloski's physical therapist dated July

6, 1987, provides: "Mr. Beadin Ajruloski [sic] is presently undergoing physical therapy treatments 2–3x/wk to rehabilitate his left knee from injury he sustained at work. He is also under the care of orthopedic surgeon Dr. Eric Sigmond, M.D." (A.R. at p. 5). The note from Dr. Sigmond dated July 6, 1987, provides: "Beadin Ajruloski [sic] is under my care and will be for another six months." (A.R. at p. 4).

**5.** Section 106(a)(9) provides: "Any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(9).

al physical custody is a jurisdictional prerequisite. However, the authorities in this Circuit relied upon by the government are factually distinguishable from the case at bar. In *Terrado v. Moyer*, 820 F.2d 920 (7th Cir.1987), the issue of habeas corpus jurisdiction was moot because the petitioner's attorney filed the application three days *after* the petitioner was deported. In *United States ex rel. Meyer v. Weil*, 458 F.2d 1068 (7th Cir.1972) *cert. denied* 409 U.S. 1060, 93 S.Ct. 564, 34 L.Ed.2d 514 (1972), the Seventh Circuit relied on the fact that the habeas petitioner spent no time in custody as a result of his violation of the Municipal Code of Chicago. Furthermore, the Code section violated by the petitioner merely provided for a small fine as a sanction. *Id.*, 458 F.2d, at 1071. In contrast, Ajurulloski was incarcerated after his arrest and faced the sanction of deportation rather than a small monetary fine. The authority cited by the government from other circuits also fails to support its custody arguments. *See United States ex rel. Marcello v. District Director*, 634 F.2d 964 (5th Cir.1981) *cert. denied* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981) (being subject to final order of deportation alone is not sufficient custody); *Umanzor v. Lambert*, 782 F.2d 1299 (5th Cir.1986) (court merely deciding petitioner is in custody of INS through a commercial airline by way of agency theory).

It is well settled that actual physical custody is no longer an absolute necessity for habeas corpus jurisdiction generally. *See*, e.g. *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (person released on own recognizance is "in custody" for habeas purposes), *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (person released on parole is "in custody" for habeas jurisdiction). Indeed the Seventh Circuit has permitted habeas review for a petitioner released on bond after the government initiated deportation proceedings. *Arias v. Rogers*, 676 F.2d 1139 (7th Cir.1982). Fur-

thermore, the weight of authority favors a determination that a petitioner released on bond after a final order of deportation is "in custody." *Flores v. United States Immigration and Naturalization Service*, 524 F.2d 627 (9th Cir.1975); *Gurbisz v. United States Immigration and Naturalization Service*, 675 F.Supp. 436, 441 (N.D. Ill.1987); and *Saleh v. Meese*, 669 F.Supp. 885, 887 (N.D.Ill.1987). In the case at bar, the government released Ajurulloski after he posted a $7,500 bond. (A.R. at p. 13). In addition, Ajurulloski became subject to a final order of deportation when he waived his right to appeal the order of the Immigration Judge. (A.R. at p. 6). The Court holds that there is sufficient interference with the petitioner's freedom to satisfy the custody command of § 106(a)(9).

## C. Exhaustion

■ The third preliminary issue the Court must address is the government's contention that this Court lacks jurisdiction because Ajurulloski failed to exhaust his administrative remedies. The government claims that the exhaustion doctrine required Ajurulloski to apply for a stay of deportation after the District Director, in his discretion, denied an extension of his voluntary departure date. The government fails to cite authority requiring an alien to seek alternative forms of administrative relief prior to seeking judicial review. The statute cited by the government is not controlling on this issue because it concerns judicial review of final orders, and not review of discretionary decisions.[6]

The four cases cited by the government in support of this argument are, *Kashani v. Nelson*, 793 F.2d 818 (7th Cir.1986) *cert. denied*, 479 U.S. 1006, 107 S.Ct. 644, 93 L.Ed.2d 701 (1986) ("Kashani"); *In Ja Kim v. Immigration and Naturalization Service*, 403 F.2d 636 (7th Cir.1968) ("Ja Kim"); *Roumeliotis v. Immigration and Naturalization Service*, 354 F.2d 236 (7th Cir.1966) *cert. denied* 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 360 (1966) ("Roumeliotis"); and *Kladis v. Immigration and Nat-*

---

**6.** The exhaustion provision provides in pertinent part: "An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws...." 8 U.S.C. 1105a(c).

*uralization Service,* 343 F.2d 513 (7th Cir. 1965) ("Kladis"). *Kladis, Roumeliotis,* and *Ja Kim* are each distinguishable in that the petitioners in those cases sought judicial review of final orders of deportation without first appealing such orders administratively. *Kashani* is inapplicable because the petitioner attempted to appeal the denial of an asylum application in the courts before his deportation hearing. Thus, judicial review in each of the cases cited by the government was inappropriate because the petitioners failed to pursue an available avenue of direct administrative appeal, or in the case of an asylum request, a renewal of the request in the deportation proceedings.

In contrast, Ajurulloski concedes that he is deportable. He challenges only the District Director's denial of an extension of his voluntary departure date. The pertinent regulation expressly prohibits an administrative appeal of such discretionary relief. 8 C.F.R. § 244.2 [7] Therefore, because Ajurulloski had no further avenue of direct administrative appeal he has exhausted his administrative remedies. In these circumstances the Court holds that it has subject matter jurisdiction over Ajurulloski's petition.

## IV. STANDARD OF REVIEW

▮ The district court is limited in its review of a discretionary decision of a district director. The court may upset such a decision only upon a showing of abuse of discretion. *See, Kladis v. Immigration and Naturalization Service,* 343 F.2d 513, 515 (7th Cir.1965). A district director abuses his discretion if there is no evidence to support his decision or if his decision is based upon an improper understanding of the law. *Bothyo v. Moyer,* 772 F.2d 353, 355 (7th Cir.1985).[8]

▮ When he sought an extension of his voluntary departure date, Ajurulloski claimed that he needed more time in the United States to gain medical treatment and pursue a workers' compensation claim. The Seventh Circuit has held that a district director did not abuse his discretion when he denied an alien relief from deportation under similar circumstances. *Roumeliotis v. Immigration and Naturalization Service,* 354 F.2d 236 (7th Cir.1966) *cert. denied* 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 360 (1966). In *Roumeliotis,* the petitioner claimed that he had to remain in the United States for the purpose of gaining medical attention for his child who suffered from a congenital illness. The Seventh Circuit held that an administrative finding to the effect that the illness would not hamper the child's ability to travel, and that further medical treatment was available in the destination country, did not constitute an abuse of discretion.

In support of his request for an extension, Ajurulloski submitted letters from his attorney and physical therapist, and a note from his orthopedic surgeon.[9] The District Director considered the evidence and the physical appearance of Ajurulloski. (A.R. at p. 1). He concluded that the letters indicated that Ajurulloski needed no further surgery. Furthermore, he found that Ajurulloski's ability to walk without the use of extrinsic aids rendered him mobile to the extent that travel would not endanger his health. (A.R. at p. 1). Ajurulloski argues that these conclusions represent an abuse of discretion; however, he cites no authority in support of this argument. It

---

**7.** The regulation provides in pertinent part: "A request by an alien for an extension of time within which to depart voluntarily shall be filed with the district director having jurisdiction over the alien's place of residence. Written notice of the district director's decision shall be served on the alien, and no appeal may be taken therefrom." 8 C.F.R. § 244.2.

**8.** Ajurulloski submits two exhibits with his petition which suggests that he would have the Court consider his application for an extension of voluntary departure *de novo.* The government correctly indicates that, under the abuse of discretion standard, the Court is limited to considering the evidence submitted to the District Director. *Cf., Navarro v. Dist. Director of U.S. Immigration,* 574 F.2d 379, 383 (7th Cir. 1978) *cert. denied,* 439 U.S. 861, 99 S.Ct. 182, 58 L.Ed.2d 170 (1978). Therefore, the exhibits submitted by Ajurulloski are irrelevant to this proceeding.

**9.** *See supra* note 4.

is clear from this Court's review of the Administrative Record, that evidence existed to support the decision of the District Director.

Ajurulloski next argues that the District Director misunderstood the law when he found that Ajurulloski could pursue his workers' compensation claim after departing the United States. The Seventh Circuit has held that a district director did not abuse his discretion when he failed to allow an alien to remain in the United States to pursue a workers' compensation claim. *Kladis v. Immigration and Naturalization Service*, 343 F.2d 513 (7th Cir.1965). In *Kladis*, the district director refused to grant an alien relief from deportation approximately two months before a hearing on his pending claim. *Id.*, 343 F.2d, at 514. Similarly, other courts have held that a pending lawsuit does not alone entitle an alien to remain in this Country. *Bolanos v. Kiley*, 509 F.2d 1023 (2d Cir.1975) (no abuse of discretion in denial of discretionary relief when alien sought to prosecute civil rights claim). Thus, the Court finds that the District Director did not misunderstand the law.

### V. CONCLUSION

The Court holds that Ajurulloski's petition for habeas corpus relief falls within the narrow jurisdictional grant provided in § 106(a)(9) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a)(9). However, the Court further holds that Ajurulloski has failed to meet his burden of showing that the District Director abused his discretion when he refused to extend the voluntary departure date set by the Immigration Judge. Accordingly, the government's motion to dismiss the petition is hereby granted.