Ljubisa ("Lou") FILIMONOVIC,
Petitioner,

v.

DISTRICT DIRECTOR, U.S.I.N.S.,
Respondent.

Civ. A. No. 95–K–1862.

United States District Court,
D. Colorado.

Sept. 27, 1995.

Daniel M. Kowalski, Denver, CO, for Petitioner.

Henry L. Solano, United States Attorney, Michael E. Hegarty, Assistant United States Attorney, Denver, CO, for Respondent.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This habeas corpus petition came before me for hearing on September 19, 1995. Petitioner Ljubisa Filimonovic, an ethnic Serb from a town near Belgrade in former Yugoslavia, faces immediate deportation to the Federal Republic of Yugoslavia (FRY). The INS defines the FRY as the Serbia–Montenegro region of the former Socialist Federal Republic of Yugoslavia. Belgrade is in the FRY.

Because the FRY is distinct from the Republics of Bosnia–Herzegovina and Croatia and is not presently part of the brutal civil war being waged there, the INS District Director (Director) denied Filimonovic's request for a one-year extension of voluntary departure under 8 C.F.R. 244.1 and this petition ensued. The relief sought includes (1) a stay of deportation; (2) the reversal of the Director's decision denying him voluntary departure; and (3) a one-year extension of voluntary departure under the "civil war" provision of INS Operations Instructions (OI) 242.10(e)(3). The second request is no longer at issue as the INS granted Filimonovic 30 days voluntary departure during the pendency of this petition.

I have jurisdiction generally over immigration disputes pursuant to 8 U.S.C. § 1329 and over this habeas petition specifically pursuant to 8 C.F.R. § 244.2. *See Sibanda v. INS District Director*, 881 F.Supp. 1494, 1495 (D.Colo.1995) (aliens under deportation

order "in custody" and administrative remedies are exhausted when Director acts under § 244.2).

I affirm the Director's decision and deny the petition.

## I. BACKGROUND

### A. The Asylum Proceedings

Filimonovic arrived in the U.S. on a nonimmigrant visitor visa on or about March 5, 1987. He asserts that two days after his arrival, he filed a *pro se* asylum application with the Denver INS District Director (Director). The 1987 application appears nowhere in the Administrative Record. On March 3, 1988, with the assistance of counsel, Filimonovic filed another Request for Asylum in the United States (INS Form I–589), together with a brief in support of his request. (Admin.R. 262, 264–75.) The basis for Filimonovic's request was that he had been persecuted in Yugoslavia, and had a well-founded fear of future persecution there, because of his anti-communist political opinions, membership in a group supporting the freedom of the Serbian people from communism, and membership in the Serbian Orthodox Church. *See* Filimonovic Affid. (Admin.R. at 292–301).

Filimonovic's request was forwarded to the Bureau of Human Rights and Humanitarian Affairs (BHRHA) for an advisory opinion pursuant to 8 C.F.R. § 208.11(c). The BHRHA issued its opinion on May 18, 1988, stating that while Filimonovic was anti-communist, he belonged to no group hostile to the government and had never been sentenced or imprisoned for his beliefs. The BHRHA concluded Filimonovic did not have a well-founded fear of persecution in Yugoslavia. (Admin.R. at 291.) Based on the BHRHA's opinion, the INS notified Filimonovic on June 17, 1988 that it intended to deny his application. (Admin.R. at 289.) Filimonovic submitted a brief in rebuttal to that notice on June 30, 1988. (Admin.R. at 276.) Upon review of that brief together with Filimonovic's application, Form I–589 and supporting documentation, and the advisory opinion, the Director on August 1, 1988 issued a decision letter finding Filimonovic had failed to establish refugee status and denied his request for asylum. Pet., Attach.

B. The letter indicated no appeal from the decision would lie, but that Filimonovic could renew his request for asylum or apply for withholding of deportation under § 243(h) of the Immigration and Nationality Act (the "Act"), as amended, before an Immigration Judge. *Id.* Otherwise, Filimonovic was given until September 1, 1988 to depart voluntarily. *Id.*

Filimonovic did not depart, and the INS issued an Order to Show Cause as to why he should not be deported. A hearing on the Order was set for February 27, 1989 before an Immigration Judge (IJ). As part of the Stipulations Relating to Pre–Hearing Matters into which Filimonovic and the INS entered, (Admin.R. at 255–57), Filimonovic conceded he was deportable on the charges set forth in the Order, i.e., overstaying his visa in violation of § 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (now § 1251(1)(C)). He also indicated his desire to reapply for asylum and a withholding of deportation.

Filimonovic did so, and the IJ requested another advisory opinion from the Bureau of Human Rights and Humanitarian Affairs. The opinion issued January 23, 1989, with the Bureau again concluding that Filimonovic had failed to state a valid claim of persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion. (Admin.R. at 250.) The February 27 hearing proceeded, and substantial testimony and other evidence was taken. Based upon that evidence, the IJ denied Filimonovic's asylum request. He did, however, again grant Filimonovic voluntary departure. *See* Oral Decision of IJ (Admin.R. at 184–200).

Filimonovic appealed the IJ's decision to the Board of Immigration Appeals (BIA), which, four years later, affirmed the IJ's decision. *See* Order (filed Aug. 30, 1993) (*per curiam*) (Admin.R. at 130–33). The BIA, however, noted the changed circumstances that prevailed after the collapse of former Yugoslavia, but stated that neither party had raised "any issue regarding the effect of these changed circumstances either on the underlying applications for relief or on the place of deportation." *Id.* at n. 1 (Admin.R. at 133).

Filimonovic appealed the BIA's decision to the Tenth Circuit. During the pendency of the appeal, he filed a "Motion for Leave to Adduce Additional Evidence" pursuant to 28 U.S.C. § 2347, requesting a remand of his case to the agency.[1] Filimonovic maintained changed conditions in former Yugoslavia—including the fact that Yugoslavia no longer exists as an independent country, that it was engulfed in war, and that the current Serbian president is a "former hard-line communist" and "author of war crimes"—entitled him to a remand for consideration of those conditions.

The Tenth Circuit disagreed. In an unpublished opinion issued August 1, 1994, the Tenth Circuit affirmed the BIA and denied Filimonovic's motion for remand. *Filimonovic v. INS*, No. 93–9569, 35 F.3d 574, 1994 WL 413254 at *2–3. Addressing each of the changed circumstances raised, the Court determined Filimonovic was not entitled to a remand under § 2347(c). Filimonovic's Petition for Rehearing with Suggestion for Rehearing *en banc* was denied by the Court on December 7, 1994.

### B. *Voluntary Departure*

During the pendency of his appeal to the Tenth Circuit and four days before the September 29, 1993 departure date ordered by the BIA, Filimonovic purportedly[2] filed a request for a one-year extension of voluntary departure. *See* Pet. at 4 & Attach. F. As grounds, Filimonovic cited the "state of war in the former Yugoslavia," the lack of international flights into or out of Belgrade, and the fact that the U.S. did not yet recognize the "Federal Republic of Yugoslavia"—the country designated by the INS as his deportation destination—as the successor state to the Socialist Federal Republic of Yugoslavia. Filimonovic received no response and did not leave on the scheduled departure date. Eleven months later, the day after the Tenth

Circuit's August 1, 1994 opinion issued, Filimonovic filed a second request for extension of voluntary departure. Pet. at Attach. F. In addition to the grounds offered in support of his 1993 request, Filimonovic cited the "civil war" provision of INS Operations Instruction (OI) 242.10(e)(3);[3] the fact that both the IJ and the BIA granted voluntary departure; and his plans to file a petition for rehearing with the Tenth Circuit. *Id.* He also advised the Director that he would seek judicial review of any denial of the extension requested, along with attorney fees. *Id.* The INS did not respond.

On June 10, 1995, Filimonovic received a deportation order (INS Form I–166) scheduling him for a June 27, 1995 departure to "Yugoslavia." *See* Resp.Pet., Attach. 11, p. 3. That same day, Filimonovic filed a third request for extension of voluntary departure date. *Id.* at pp. 1–2. The request again cited the "civil war" provisions of OI 242.10(e)(3) and the "state of open warfare engulf[ing] the Balkans, including the *former* Yugoslavia." *Id.* (emphasis original). In a lengthy letter dated June 27, 1995, the Director responded. *See* Resp.Pet., Attach. 12. The Director clarified that "Yugoslavia" as used in the Form I–166 referred to the FRY, or the Serbia–Montenegro region of the former Socialist Federal Republic of Yugoslavia. The region, the Director explained, specifically does not include the Republics of Bosnia–Herzegovina and Croatia, where the "bulk" of the Balkans fighting is taking place. *Id.* The Director found Filimonovic's underlying premise regarding the "state of war" in his homeland "erroneous," found that as a Serb and member of the ruling class in the FRY, Filimonovic "should experience no difficulty with the government," and concluded OI 242.10(e) was inapplicable to Filimonovic's situation. *Id.* Further, the Director con-

---

**1.** Section 2347 entitles a petitioner to a remand to adduce additional evidence upon a showing (1) that the evidence is material, and (2) that there are reasonable grounds for the petitioner's failure to adduce that evidence before the agency originally. *See Becerra–Jimenez v. I.N.S.*, 829 F.2d 996, 1000 n. 4 (10th Cir.1987).

**2.** The INS claims they never saw this request until it was attached to a similar request made after the Tenth Circuit's decision.

**3.** OI 242.10(e)(3) requires written notice of a one-year voluntary departure period allowed "[a]liens who have been granted asylum or voluntary departure due to temporary inability to return to their home country because of civil war or catastrophic circumstances there."

cluded he lacked authority to extend Filimonovic's voluntary departure because the grounds asserted were covered exclusively by the Temporary Protected Status (TPS) provisions of new § 244A of the Act, 8 U.S.C. § 1254a. With respect to citizens of the former Yugoslavia, TPS has been granted individuals from Bosnia–Herzegovina, but not the FRY. *Id.* The Director denied the extension of voluntary departure on the grounds requested, and notified Filimonovic that he had authorized the issuance of a new I–166. *Id.* Filimonovic received the new I–166 that same day. The form notified Filimonovic his deportation to the "FRY" was scheduled for July 27, 1995. *See* Pet., Attach. A.

By letter dated June 30, 1995, Filimonovic requested reconsideration of the Director's June 27, 1995 denial of voluntary departure. *Id.* Attach. F. Filimonovic emphasized the fact that he had been granted voluntary departure at every level of the asylum appeal process, and questioned the Director's "arbitrary" denial now. He challenged the Director's "clarification" of what constitutes the FRY, citing a 1994 U.S. State Department Country Report on Human Rights which indicated that the U.S. did not recognize Serbia–Montenegro as the successor state to the former Yugoslavia and had suspended the FRY from participation in the United Nations and other international organizations. Finally, Filimonovic informed the Director that he intended to file a motion to reopen his asylum proceedings with the BIA as well as an application for suspension of deportation, and reiterated the basis for his fear of persecution and economic hardship upon return to his homeland. *Id.*

On July 19, 1995, Filimonovic filed his Motion to Reopen and Remand and Motion for Stay of Deportation with the BIA, together with a Form EOIR–40 Application for Suspension of Deportation. (Admin.R. 10–125 & Pet.Attach. G.) As grounds, Filimonovic cited "new facts" which were "unavailable at the time of his [January 1989] deportation hearing" that establish a well-founded fear of persecution. (Admin.R. at 10–11, 21–22.) These facts included (1) now that he has resided in the U.S. for seven years, Filimono-

vic is *prima facie* eligible for suspension of deportation under 8 U.S.C. § 1254(a)(1); (2) the Milosevic regime has "recently demonstrated" its willingness to persecute political dissenters like Filimonovic (Admin.R. at 23); and (3) Filimonovic fears induction into a military known to commit atrocities and fears persecution should he refuse to serve. *Id.* Also on July 19, 1995, Filimonovic filed a Request for Stay of Deportation with the Director, seeking a one-year stay of the BIA's decision on his motion to reopen and Form EIOR–40 application. On July 25, 1995, Filimonovic filed the instant Petition for Writ of Habeas Corpus.

The Director's response to Filimonovic's request for reconsideration of the June 25, 1995 denial of voluntary departure was issued on August 31, 1995. *See* Resp.Attach. 13. The response began with the admonition that Filimonovic's request properly should have been termed one for reinstatement of voluntary departure, as the thirty days voluntary departure granted by the BIA had expired and an order of deportation was in effect. The Director rejected any contention that the FRY somehow does not exist because the U.S., for diplomatic reasons, has refused to recognize it. The Director also rejected Filimonovic's claims of political persecution, economic persecution, general country conditions, and the need for voluntary departure because of his desire to seek another form of relief from deportation. *Id.* at p. 11. In light of the IJ and BIA's earlier decisions granting voluntary departure, however, the Director reinstated Filimonovic's voluntary departure for thirty-days, upon the condition that Filimonovic supplement his request to include an unqualified statement of his willingness to depart within the allotted time frame.[4] *Id.*

The Director responded to Filimonovic's request for a one-year stay of deportation on September 13, 1995. Resp., Attach. 14. In this response, the Director first determined that in exercising his discretion to grant or deny the stay request, it was reasonable for him to consider not only whether Filimonovic had established a *prima facie* case for suspending his deportation under 8 U.S.C.

---

**4.** Such a statement is a prerequisite for voluntary departure pursuant to 8 C.F.R. § 244.1.

§ 1254(a), but also whether Filimonovic had established a *prima facie* case for reopening his asylum proceedings under 8 C.F.R. § 3.2. *See id.,* at p. 4. The Director then concluded Filimonovic had done neither. *Id.* at pp. 9 (no *prima facie* showing of extreme hardship), 10–11 (no evidence to support renewed claim of political persecution, no evidence to support claim of forced recruitment). Given the pendency of Filimonovic's habeas corpus petition, the Director nevertheless stayed deportation until the September 19 hearing date. At the hearing, the government agreed to stay deportation further until I issued a written opinion from which appeal to the Tenth Circuit could be taken.

## II. *MERITS*

### A. *Voluntary Departure*

Voluntary departure is a privilege created by statute. Section 244 of the Act provides, in relevant part, that

(1) [T]he Attorney General may, in [her] discretion, permit any alien under deportation proceedings, ... to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that his is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection.

8 U.S.C.A. § 1254(e). Regulations promulgated pursuant to the statute are found at 8 C.F.R. Part 244. They provide that an alien seeking voluntary departure must establish he is willing and has the immediate means to depart promptly from the United States before he will be eligible for consideration. *Id.,* § 244.1. Authority to reinstate or extend the time within which to depart voluntarily is within the "sole jurisdiction" of the District Director. *Id.,* § 244.2.

The statutory and regulatory scheme thus contemplates a three-part test for securing an extension of voluntary departure. First, the alien must carry the burden of proving statutory eligibility for voluntary departure. If eligible, the Director then evaluates the various discretionary factors militating for and against voluntary departure. If voluntary departure is granted, the Director then evaluates discretionary factors for and against the extension. In reviewing the resulting decision, I may examine only "whether the discretion was actually exercised and whether it was exercised in an arbitrary and capricious manner." *Becerra–Jimenez,* 829 F.2d at 999 (reviewing denial of voluntary departure).

### B. *The Director's Decision*

For the purposes of this opinion, I will assume Filimonovic is statutorily eligible for the relief sought.[5] Under *Becerra,* I next must consider whether the Director actually exercised his discretion. Filimonovic claims the Director did not because he failed in his June 25, 1995 letter to identify or weigh the favorable and unfavorable factors supporting the request. Pet. at 7–8. While the June 25 letter addressed only those factors presented by Filimonovic in his requests (i.e., the applicability of OI 242.10(e)(3) and the existence of a "state of war" in the FRY), the Director's exhaustive August 31, 1995 reconsideration addressed each of the factors Filimonovic claims were omitted. While it is unfortunate these factors were given thorough consideration only after Filimonovic undertook an appeal to this court, the fact is they were. I conclude the Director exercised his discretion in denying the one-year extension and move on to consider whether the exercise was reasonable.

Filimonovic asserts the Director's refusal to extend his voluntary departure for a

---

**5.** The Director does not concede this point. In denying Filimonovic's request for reconsideration, the Director noted none of Filimonovic's three requests for extension of voluntary departure contained the required representation that he had the means or willingness to depart the United States. Resp., Attach. 13 at 11; see 8 C.F.R. 244.1. It was not until Filimonovic filed his June 30, 1995 request for reconsideration that he indicated a willingness to depart, and then only "if and when that becomes necessary." *See* Filimonovic Affid., Pet.Attach. I. However, because the Director went on to exercise his discretion in denying Filimonovic's request for extension of voluntary departure, I will assume for the purposes of this opinion the threshold issue of eligibility.

one-year time period was an abuse of discretion in that it was arbitrary and capricious, unsupported by the evidence and based upon an improper understanding of the law.[6] An abuse of discretion will be found only if "there is no evidence to support [the Director's] decision or if his decision is based upon an improper understanding of the law." *Ajurulloski v. INS,* 688 F.Supp. 1272, 1276 (N.D.Ill.1988) (citing *Bothyo v. Moyer,* 772 F.2d 353, 355 (7th Cir.1985)). I applied this standard recently in *Sibanda v. INS Director,* 881 F.Supp. at 1497–98 (D.Colo.1995), finding there that the Director abused his discretion in denying voluntary departure without rational explanation.

Filimonovic asserts *Sibanda* is controlling. He contends none of the reasons offered by the Director for the denial of a one-year extension of voluntary departure was rational or supported by the record. Specifically, Filimonovic claims the Director abused his discretion when he determined neither country conditions nor the factors raised in Filimonovic's asylum proceedings warranted an extension of voluntary departure. Neither contention has merit.

### 1. *The finding that Serbia–Montenegro is not in a "state of war."*

■ Filimonovic argues the Director's finding that his homeland was not in a "state of war" or "engulfed by catastrophic circumstances" is unsupported by the record and maintains he should have been granted an extension of voluntary departure under OI 242.10(e)(3). I disagree. The Director considered the Department of State Travel Advisories submitted by Filimonovic in support of his request, and determined Filimonovic's description of Serbia–Montenegro as a "war zone" exaggerated and misleading. Resp.Attach. 13 at 7–8. Specifically, the Director noted the advisories indicated the region was stabilizing in that commercial air traffic had been reestablished; Belgrade airport was open to civilians; travel was possible within the country by car, bus, train, and air; and U.S. citizens could enter the country with a passport and visa. *Id.* The Director relied on various State Department reports and information indicating that the region surrounding Filimonovic's home town of Obrenovec, only a short distance from Belgrade, is free from any warfare. *Id.* Attach. 12.

■ Moreover, Filimonovic's reliance on OI 242.10(e)(3) is misplaced. The instruction, a non-binding internal INS guideline, merely requires that aliens who *already* have been granted asylum or voluntary departure due to a temporary inability to return to their home country because of civil war or catastrophic circumstances "should be advised of their status by letter.... [not] Form I–210," and informed that "due to the current situation in their home country, they have been granted a one-year period within which to voluntarily depart." *See* Pet., Attach. I. As such it states the INS's internal policy regarding written notice and length of extension under certain previously found circumstances; it does not mandate an extension be given nor confer substantive rights on aliens who then may sue to enforce them. *See, e.g., Ponce–Gonzalez v. INS,* 775 F.2d 1342, 1346 (5th Cir.1985).

■ The only statute that may confer such rights is § 244A of the Act, which Congress enacted in 1990 to address concerns regarding the return of individuals to dangerous situations in their homeland. *See* 8 U.S.C.A. § 1254a (1995 Pock.Pt.). Section 244A authorizes the Attorney General to grant Temporary Protected Status (TPS) to nationals of countries designated as posing serious, but temporary, threats to the personal safety of individuals returned there. *Id.* § 1254a(a)(1). The grounds for such designation include "ongoing armed conflict within the state."[7] Nationals granted TPS

---

6. At the September 19 hearing, Filimonovic also alleged the denial was issued in retribution for his continued efforts to appeal his asylum case. Filimonovic offered no facts to support the allegation and there is nothing in the record from which its truth can be inferred.

7. Other grounds include the occurrence of natural or environmental disasters resulting in a substantial disruption of living conditions; inability of the foreign state to handle the return; request by the foreign state of designation under the statute; or other "extraordinary and temporary" conditions in the foreign state that prevent nationals' safe return. *Id.* at subparts (b)(1)(A), (B) & (C).

will not be deported during the period the status is in effect. *Id.* According to the Director, the situation in the Balkans has been reviewed in this regard and TPS has been granted individuals from Bosnia–Herzegovina, but not Serbia–Montenegro.[8]

The Director's finding that Serbia–Montenegro is not in a "state of war" is supported by the record. The Director's decision to deny Filimonovic an extension of voluntary departure on that ground was neither based on a misunderstanding of the applicable law nor an abuse of discretion, and will not be reversed.

2. *Refusal to grant extension for reasons already considered during course of asylum proceedings.*

■ Filimonovic's initial requests for an extension of voluntary departure were premised almost exclusively on the assertion that his homeland was in a state of war. After the Director denied the requests and Filimonovic sought reconsideration, Filimonovic expanded his reasons to include those asserted earlier in his asylum proceedings, i.e., that he fears political persecution as well as social and economic hardship if forced to return. *See* Pet.Attach. F. Filimonovic stated an extension was necessary so he might move to reopen his asylum proceedings and seek suspension of deportation. *Id.*

The Director properly declined to "turn the limited relief of voluntary departure into some type of quasi-political asylum." Resp.Attach. 13, p. 7. Nevertheless, he considered thoroughly Filimonovic's concerns. He noted the State Department, Bureau of Human Rights and Humanitarian Affairs, the IJ, the BIA, and the Tenth Circuit all had reviewed Filimonovic's assertions of political persecution and had rejected them. *Id.* at p. 6–7. Moreover, the Tenth Circuit also rejected Filimonovic's contention that "new

facts" supported a remand of his asylum petition to the IJ for further proceedings.

The Director rejected Filimonovic's reliance on 1993 data to support his assertion of economic hardship. *Id.* at 8. He referenced more recent data from human rights journals, economic reports, and news articles reflecting a more sanguine state of affairs in Serbia–Montenegro than Filimonovic suggests. *Id.* at 8–9. Finally, the Director expressed "serious misgivings" about Filimonovic's request that voluntary departure be extended while he pursued his motion to reopen and for suspension of deportation. *Id.* He found the argument undermined Filimonovic's already weak expression of willingness to depart the U.S. and suggested a misuse of the discretionary relief of voluntary departure. He noted the purpose of voluntary departure is to enable an alien to avoid the stigma of deportation and to choose his destination *when* he departs, not to avoid departure entirely. *Id.* at 10.

The Director's findings are supported by the record and his legal conclusions are proper.

### III. *CONCLUSION*

Based on my review of the parties' briefs and supporting submissions, the arguments presented at the September 19, 1995 hearing and the relevant caselaw, I conclude the Director did not act arbitrarily or capriciously, or contrary to law, when he denied Filimonovic a one-year extension of voluntary departure. Accordingly,

IT IS ORDERED the Petition for Writ of Habeas Corpus is DENIED.

---

8. Congress expressly provided that § 244A "constitute[s] the exclusive authority of the Attorney General under law to permit aliens who are or may become otherwise deportable ... to remain in the United States temporarily because of their particular nationality or region of foreign state nationality." 8 U.S.C. § 1254a(g). Relying on this provision, the Director maintains he lacked authority to grant Filimonovic an extension on the grounds asserted. Resp. at 13. I hesitate to place individuals at the mercy of some bureau-

cratic classification before they can be granted an extension of voluntary departure due to dangerous conditions in their homeland. These conditions, as we see every day, can change precipitously and often. However, because a determination of the exclusivity issue is not necessary to my analysis here, I leave for another day the suggestion that § 244A affects the Director's authority to extend voluntary departure at his discretion under 8 C.F.R. § 244.2.